IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID HAYMAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:17-CV-307 |
| | § | |
| MEDARDO VILLARREAL, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

The Court is in receipt of Defendant Elizabeth Cordova's ("Cordova") Motion for Summary Judgment, Dkt. No. 36; Plaintiff's Response to Defendant Cordova's Motion for Summary Judgment, Dkt. Nos. 40, 41, 42; the Magistrate Judge's Memorandum and Recommendation ("M&R"), Dkt. No. 47; and Plaintiff's Objections to the M&R, Dkt. No. 49.

After independently reviewing the filings, the record, and applicable law, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the M&R, Dkt. No. 47, for the reasons below.

**I. BACKGROUND**

The Court adopts Magistrate Judge Jason B. Libby's description of the procedural background and Plaintiff's allegations:

> Plaintiff David Hayman ["Hayman"] is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action, Plaintiff claims [that] prison officials' taking from his possession several religious items violated his constitutional rights as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et seq. . . .
>
> Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. He is currently serving a twenty-five-year sentence entered on February 29, 2008 for a conviction out of Wichita County, Texas.

> The facts giving rise to Plaintiff's claims in this case occurred in connection with his current assignment to the McConnell Unit.
>
> Plaintiff's claims arise in connection with McConnell Unit officials taking from his possession several religious items related to his Native American faith. Plaintiff named the following McConnell Unit prison officials as defendants in his original complaint: (1) Lieutenant C. Garcia; (2) Assistant Warden Corey Furr; (3) Officer Medardo Villarreal ["Villarreal"]; (4) Disciplinary Hearing Officer (DHO) Christopher Pauly; and (5) Officer Cordova. (D.E. 1, p. 3). Plaintiff seeks injunctive relief in the form of return of all religious items unlawfully seized. (D.E. 1, p. 4).
>
> A *Spears*[1] hearing was conducted on October 25, 2017. On November 17, 2017, the undersigned issued a Memorandum and Recommendation (M&R), recommending that Plaintiff's complaint be dismissed for failure to state a claim and/or as frivolous because he had failed to state a cognizable constitutional claim against any one of the named Defendants. (D.E. 10).
>
> In his objections to the M&R, Plaintiff argued that he had also raised RLUIPA claims in his complaint. (D.E. 11, p. 2). After considering Plaintiff's objections, Senior United States District Judge Hilda G. Tagle adopted in part and declined to adopt in part the M&R. (D.E. 15). Judge Tagle declined to adopt the M&R only to the extent that Plaintiff's allegations had stated RLUIPA claims against Officers Villareal and Cordova in their official capacities for injunctive relief. (D.E. 15, p. 6). In light of Judge Tagle's order, the undersigned directed service of Plaintiff's complaint on Officers Villareal and Cordova. (D.E. 16).
>
> On June 22, 2018, Officer Cordova filed her answer. (D.E. 21). That same day, the Office of the Attorney General (OAG) advised the Court that Officer Villareal was no longer employed with the TDCJ. (D.E. 22). On June 25, 2018, the undersigned granted the OAG's motion to place Officer Villareal's last known address under seal. (D.E. 24). Officer Villareal, however, has not been served with the complaint.
>
> On December 19, 2018, Officer Cordova filed a Motion for Summary Judgment. (D.E. 36). Plaintiff has filed a response along with a Statement of Undisputed Facts and Genuine Disputes. (D.E. 40, 41).

Dkt. No. 47 at 1–3. On July 8, 2019, Magistrate Judge Libby published the M&R, Dkt. No. 47. On July 29, 2019, Plaintiff filed his objections to the M&R. Dkt. No. 49.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

## II. LEGAL STANDARD

### a. Summary Judgment

The Court adopts the M&R's legal standard on summary judgment:

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Dkt. No. 47 at 10–11.

### b. RLUIPA

The Court adopts the M&R's legal standard on RLUIPA:

Section 3 of the RLUIPA concerns institutionalized persons and states:
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
    (1) is in furtherance of a compelling governmental interest; and
    (2) is the least restrictive means of furthering that compelling government interest.
42 U.S.C. § 2000cc-1(a). The Act broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A).

RLUIPA, which provides a private cause of action, *id.,* § 2000cc-2(a), implements a burden-shifting framework. *Ware v. Louisiana Dep't of Corrections*, 866 F.3d 263, 268 (5th Cir. 2017); *Chance v. Tex. Dep't of Crim. Justice*, 730 F.3d 404, 410-11 (5th Cir. 2013). The plaintiff's initial burden is two-fold: he or she must show that (1) the relevant religious exercise is "grounded in a sincerely held religious belief" and (2) the government's action or policy "substantially burden[s] that exercise" by, for example forcing the plaintiff "to 'engage in conduct that seriously violates [his or her] religious beliefs.'" *Holt v. Hobbs,* --- U.S. ---, 135 S. Ct. 853, 862 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.,* --- U.S. ---, 134 S. Ct. 2751, 2775 (2014)). If the plaintiff car[r]ies this burden, the government bears the burden of proof to show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a); *Holt,* 135 S. Ct. at 863.

Despite RLUIPA's express purpose to protect the religious observances of individualized persons, the statute does not give courts carte blanche to second-guess the reasoned judgments of prison officials. Indeed, while

Congress enacted the RLUIPA to address the many "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, it nevertheless anticipated that courts entertaining RLUIPA challenges "would accord 'due deference to the experience and expertise of prison and jail administrators.'" *Cutter v. Wilkinson,* 544 U.S.709, 716-17 (2005) (*quoting* 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sens. Hatch and Kennedy on the RLUIPA)). The Supreme Court has cautioned that "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety," and "an accommodation must be measured so that it does not override other significant interests." *Id.* at 722. The Supreme Court further instructed:

> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling governmental interest" standard, context matters in the application of that standard. Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Id.* at 722-23 (internal quotation marks and citations omitted).

Dkt. No. 47 at 12–13.

## III. LEGAL ANALYSIS

### a. Summary Judgment Evidence

The Court adopts the M&R's summation of the summary judgment evidence:

Officer Cordova offers the following summary judgment evidence:
Exh. A: Expert Report of Warden Miguel Martinez (D.E. 36-1).
Exh. B: Affidavit of Chaplain Joseph Wright (D.E. 36-2).
Exh. C: Plaintiff's Relevant Grievance Records (D.E. 36-3).
Exh. D: Plaintiff's TDCJ Property Records (D.E. 36-4).
Exh. E: Plaintiff's History of TDCJ Commissary Purchases (D.E. 36-5).
Exh. F. Plaintiff's TDCJ Chaplaincy Records (D.E. 36-6).
Exh. G: Plaintiff's TDCJ McConnell Unit Records (D.E. 36-7).

Plaintiff, in turn, has submitted the following summary judgment evidence: (1) affidavit of inmate David McCall ["McCall"] (D.E. 42, p. 2); (2) Plaintiff's

affidavit (D.E. 42, p. 3); and (3) affidavit of inmate Daniel Gruenfelder ["Gruenfelder"] (D.E. 42, p. 4).[2] Plaintiff's verified complaint and testimony at the *Spears* hearing also serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Like other parts of the record, Plaintiff's verified complaint and *Spears*-hearing testimony must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment. *See Mengele v. AT&T Servs. Inc.*, No. 3:15-cv-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c)*.") (emphasis added) (citations omitted).

The undersigned, therefore, will not consider parts of Plaintiff's verified complaint or *Spears*-hearing testimony that are not made on personal knowledge or that would be inadmissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the competent summary judgment evidence establishes the following:

**A. Plaintiff's Evidence**

***(1) Plaintiff's Verified Complaint and Spears-Hearing Testimony***
Plaintiff is of Choctaw Indian descent and has been practicing his Native American faith since 2012. Plaintiff has formally designated his religious preference with the TDCJ-CID as Native American.

On April 7, 2017, Officer Villareal informed Plaintiff he was required to move into a different cell. Plaintiff explained to the officer he did not want to move. Officer Villareal told Plaintiff that, if he were Plaintiff, he would not want Officer Villareal to pack his personal property for the move. Plaintiff proceeded instead to pack his own belongings for the move.

Officer Cordova, who works at the head desk of the building, was responsible for searching Plaintiff's personal property and moving it into another bag. When Plaintiff's personal property was returned to him, he was given a piece of paper to sign. Plaintiff alleges he was pressured to sign the paper verifying that all his personal property had been returned to him. Plaintiff signed the paper without having sufficient time to ensure whether all of his belongings were in his possession.

---

[2] Plaintiff references these three affidavits in his response to the summary judgment motion. (D.E. 40, p. 2). Plaintiff, however, attached each affidavit to his Motion to Strike Defendant Cordova's Summary Judgment Evidence. (D.E. 42, pp. 2-4). The undersigned will address the motion to strike in a separate order.

Plaintiff later discovered that several religious items of his Native American faith were missing. Plaintiff lists the missing items as follows: sacred medicine box, sacred medicine bag, headband, smudge bowl, sacred prayer feather, seven sacred stones, animal blessing card, medicine wheel, and dreamcatcher. Plaintiff believes that Officer Cordova was responsible for the loss of his religious items. When Plaintiff brought the issue of his missing items to the attention of prison officials, he was told that his religious items were not in fact missing as he had received them back. Plaintiff testified that he would like his religious items returned so he can pray properly.

### *(2) Affidavits*
Plaintiff states in his affidavit that he was given all of his religious items from other Native Americans at the McConnell Unit, that the unit chaplain never required that such items be approved, and that he is unable to practice his religion at this time due to the fact his religious items were thrown away. (D.E. 42, p. 3). Inmate McCall stated in his affidavit that Officers Cordova and Lt. Garcia laughed while they were throwing away Plaintiff's religious property and that Plaintiff previously had the necessary paperwork for his religious material. (D.E. 42-2, p. 2). Inmate Gruenfelder indicated in his affidavit that Plaintiff had his religious items for many years and was given approval for them. (D.E. 42, p. 4).

### B. Officer Cordova's Evidence

### *(1) Policies Regarding Religious Devotional Items*
Warden Martinez states in his expert report that "[b]y choosing to possess property while in the TDCJ, an offender consents to the rules and regulations established regarding the acquisition, possession, storage, restrictions, and disposition of that property." (D.E. 36-1, p. 6). The TDCJ's Chaplaincy Manu[a]l 05.01 permits offenders "to possess only approved religious devotional items appropriate for the faith preference they have selected, which is identified in the TDCJ's database for each offender." (D.E. 36-1, p. 7).

The TDCJ allows Native American offenders to possess sixteen devotional items, consisting of one headband, a feather, one palm sized shell (smudge bowl), and one medicine bag containing seven sacred stones, a bone, a tooth, an herbal mixture, and one medallion (medicine wheel). (D.E. 36-1, p. 8). While a dreamcatcher is not an approved devotional item for possession, the TDCJ provides "offenders with avenues to request approval for items not included on the Chaplaincy's authorized religious devotional items list." (D.E. 36-1, p. 12).

In accordance with TDCJ Chaplaincy Manu[a]l 05.01 and Administrative Directive 07.30, the TDCJ's Religious Practice Committee (Committee) reviews religious practices and TDCJ policies to determine whether a religious devotional item shall be approved for offender possession. (D.E. 36-1, p. 7). "A religious item will be prohibited until the item is requested, evaluated, and a determination is made that it does not pose a security risk." (D.E. 36-1, pp. 7-8). Thus, "[w]hen a requested religious devotional item has not been previously addressed," the unit chaplain will complete a "Religious Practice Issue Assessment Form" requesting that the Committee evaluate the proposed religious item. (D.E. 36-6, p. 12).

The TDCJ requires offenders to obtain approval from the Unit Chaplain and Warden before acquiring religious items. (D.E. 36-1, p. 9; D.E. 36-2, pp. 2-3). Once the offender is approved to acquire the requested religious items, "the chaplain shall forward over a copy of the approval form to the commissary, and return [the paperwork] to the offender indicating the request is approved for purchase through the commissary." (D.E. 36-1, p. 9).

Chaplaincy Manu[a]l 5.01(I)(D) states that religious devotional items available at the prison's commissary shall not be purchased through outside sources. (D.E. 36-1, p. 7). "When items are not available for purchase in the commissary[,] offenders are permitted to purchase them from an outside vendor." (D.E. 36-1, p. 7). "Restrictions on religious items and their sourcing are in place to limit the introduction of contraband into the prison system, and promote safety and security to offenders and staff alike." (D.E. 36-1, p. 7).

When an offender seeks an item that is available from an outside vendor, the offender "shall submit [a request], including a picture or description of the item, the price and size, and an I-25, Inmate Request for Withdrawal." (D.E. 36-2, p. 3). In addition to being required to have a valid property slip to possess any religious items, an offender must add the devotional items to his personal property inventory. (D.E. 36-1, p. 9; 36-2, p. 3). Additionally, the offender is required to sign a "Witness Statement Form" before obtaining the religious item or items. (D.E. 36-2, p. 3). Any religious item not properly recorded as the offender's personal property on a Prop-02 Form, or otherwise altered from its original form, will result in the item being treated as contraband. (D.E. 36-1, p. 9; D.E. 36-2, p. 3).

***(2) Plaintiff's Relevant History and Circumstances***
Plaintiff is classified as a G2 custody level offender who is eligible for contact visits with immediate family, cell or dormitory housing, recreation, commissary purchases, jobs, educational programs, and religious services. (D.E. 36-1, p. 11). Disciplinary records show that Plaintiff has been found guilty of the following offenses: (1) on September 5, 2008, possession of

contraband; (2) on July 18, 2014, being out of place; (3) on August 31, 2015, being out of place; (4) on February 3, 2016, failing to take down his line; (5) on April 28, 2016, engaging in a fight with another inmate without a weapon; (6) on April 10, 2017, failing to obey an order; and (7) on April 3, 2018, failing to turn out for his work assignment. (D.E. 36-7, pp. 11-18).

The TDCJ has recognized Plaintiff as a member of a Native American faith since May 25, 2010. (D.E. 36-2, p. 2). On September 22, 2014, Plaintiff was approved to have the following religious devotional items: headband, feather, medicine bag (with seven sacred stones, bone, and tooth), medallion (medicine wheel) and prayer rug. (D.E. 36-2, p. 3; D.E. 36-3, pp. 34-35). On that date, however, none of these items were listed in Plaintiff's property inventory or available at the commissary. (D.E. 36-2, p. 3; D.E. 36-3, pp. 34-35).

When Plaintiff was moved to a new cell on April 7, 2017, his personal property was packed up, inventoried, and returned to him. (D.E. 36-3, p. 43). Plaintiff signed a property form acknowledging that there were no discrepancies with the property returned back to him. (D.E. 36-3, p. 43). On April 7, 2017, prison officers confiscated a necklace and dreamcatcher as non-dangerous contraband because there was no evidence or proof that Plaintiff had sought to obtain these devotional items from the commissary or an approved lender. (D.E. 36-2, p. 3; D.E. 36-4, p. 5). Plaintiff's commissary purchase history, which lists every item an offender purchases from the commissary, has no entry for any of the religious items Plaintiff claims in his complaint and *Spears* hearing testimony that were confiscated from him. (D.E. 36-5, pp. 3-5).

Dkt. No. 47 at 3–10.

**b. Discussion of Plaintiff's RLUIPA Claims**

In the M&R, Magistrate Judge Libby recommends granting summary judgment because Hayman failed to raise a genuine issue of material fact as to whether Cordova substantially burdened Hayman's ability to exercise his Native American faith. Dkt. No. 47 at 18. For the reasons below, the Court agrees with Magistrate Judge Libby's general recommendation that summary judgment should be granted. However, the Court declines to adopt the finding that it is undisputed that Hayman was not in actual possession of the religious items except the dreamcatcher. Instead, the Court concludes that no genuine dispute of material fact

exists as to Hayman's legal possession of the items, and therefore summary judgment should be granted on the issue of substantial burden.

### i. Sincerity of Hayman's Beliefs

The Court adopts the M&R's finding regarding the sincerity of Hayman's Native American belief:

> Plaintiff has the initial burden of showing the sincerity of his Native American belief in the Nazarite faith. *See Moussazadeh v. Tex. Dept. of Criminal Justice,* 703 F.3d 781, 790-92 (5th Cir. 2012). Officer Cordova does not challenge the sincerity of Plaintiff's beliefs, and no evidence has been presented to cast any doubt as to Plaintiff's sincerity.

Dkt. No. 47 at 14.

### ii. Substantial Burden on Religious Exercise

The Court adopts a portion of the M&R discussing the issue of substantial burden on Hayman's religious exercise:

> Under the RLUIPA, a plaintiff must also demonstrate that a government practice imposes a "substantial burden" on his religious exercise, which requires the Court to determine: (1) whether the burdened activity is "religious exercise," and if so, (2) is the burden "substantial"? *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious beliefs." *Id*. A government action or regulation creates a substantial burden on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs. *Id*. at 570.
>
> Plaintiff alleges that Officer Cordova was responsible for the following religious items being taken from him in connection with his move to another cell on April 7, 2017: sacred medicine box, sacred medicine bag, headband, smudge bowl, sacred prayer feather, seven sacred stones, animal blessing card, medicine wheel, and dreamcatcher. Officer Cordova contends in her summary judgment motion that Plaintiff has failed to demonstrate that Plaintiff's ability to practice his Native American faith has been substantially burdened. (D.E. 36, pp. 6-10). Other than the dreamcatcher, Officer Cordova contends that Plaintiff has failed to offer any competent summary judgment evidence to show he actually possessed the items taken from him. (D.E. 36, pp. 7-9). Lastly, Officer Cordova contends that Plaintiff failed to obtain the requisite approval to possess a dreamcatcher. (D.E. 36, pp. 9-10).

Plaintiff responds that Officer Cordova deliberately destroyed his religious property. (D.E. 40, p. 2). He further argues that factual issues exist as to whether his religious property was taken to deprive him of the right to practice his Native American faith. (D.E. 36, p. 2).

The competent summary judgment evidence establishes the following TDCJ policies regarding an offender's possession of religious devotional items: (1) offenders are permitted "to possess only approved religious devotional items appropriate for the faith preference they have selected, which is identified in the TDCJ's database for each offender" (D.E. 36-1, p. 7); (2) Native American offenders may possess sixteen devotional items, consisting of one headband, a feather, one palm sized shell (smudge bowl), and one medicine bag containing seven sacred stones, a bone, a tooth, an herbal mixture, and one medallion (medicine wheel) (D.E. 36-1, p. 8); (3) offenders have the option of requesting approval for religious items not included in the devotional items list (D.E. 36-1, p. 12); (4) a religious item is prohibited until it is requested, evaluated, and a determination made that it does not pose a security risk (D.E. 36-1, pp. 7-8); (5) offenders are required to obtain approval from the Unit Chaplain and Warden before acquiring religious items (D.E. 36-1, p. 9; D.E. 36-2, pp. 2-3); (6) religious devotional items available at the prison's commissary shall not be purchased through outside sources (D.E. 36-1, p. 7); (7) items not available for purchase in the commissary are permitted to be purchased by offenders from an outside vendor (D.E. 36-1, p. 7); (8) restrictions imposed on religious items and their sourcing are in place to limit the introduction of contraband into the prison system and to promote prison safety and security (D.E. 36-1, p. 7); (9) in addition to being required to have a valid property slip to possess any religious items, an offender must add the devotional items to his personal property inventory (D.E. 36-1, p. 9; 36-2, p. 3); (10) the offender also is required to sign a "Witness Statement Form" before obtaining the religious item or items (D.E. 36-2, p. 3); and (11) any religious item not properly recorded as the offender's personal property on a Prop-02 Form, or otherwise altered from its original form, will result in the item being treated as contraband (D.E. 36-1, p. 9; D.E. 36-2, p. 3).

TDCJ rules, therefore, allow Plaintiff the opportunity to acquire approval to possess both authorized devotional items as well as unauthorized devotional items. The competent summary judgment evidence shows that, on September 22, 2014, Plaintiff was approved to have the following religious devotional items consistent with his Native American faith: headband, feather, medicine bag (with seven sacred stones, bone, and tooth), medallion (medicine wheel) and prayer rug. (D.E. 36-2, p. 3; D.E. 36-3, pp. 34-35). It is undisputed that none of the [] religious items [were] properly documented as Plaintiff's property and none had been obtained from approved sources. None of the items approved were listed in Plaintiff's property inventory as of September

22, 2014 or available at the commissary. (D.E. 36-2, p. 3; D.E. 36-3, pp. 34-35). Plaintiff also has provided no evidence to show that he acquired any of religious items from an approved outside vendor.

Dkt. No. 47 at 14–17.

Hayman has provided no competent summary judgment evidence to show that he legally possessed the items taken from him on April 7, 2017. In his own affidavit, he states that he acquired all of the religious items from other Native American inmates. Dkt. No. 42 at 3. TDCJ rules do not designate other offenders as proper sources for religious devotional items. Therefore, the religious items were appropriately characterized as contraband.

Accordingly, Hayman's failure to properly obtain or possess the items negates his claim that Cordova's actions substantially burdened his religious exercise of his Native American faith. Hayman has not shown that he is unable to obtain or possess the identified religious items; rather, he has only demonstrated that he did not follow TDCJ policies to obtain or possess them. Hayman otherwise fails to provide evidence showing that Cordova prevented him from acquiring or possessing these items in accordance with TDCJ policies. Thus, the Court concludes that Hayman has failed to establish a genuine issue of material fact as to whether Cordova substantially burdened his ability to exercise his Native American faith.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant Cordova's Motion for Summary Judgment, Dkt. No. 36, and **DISMISSES** all of Plaintiff's claims.

Final judgment will be entered separately.

SIGNED this 27th day of September, 2019.

Hilda Tagle
Senior United States District Judge